UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **GREAT AMERICAN INSURANCE COMPANY OF NEW YORK,** 301 E. Fourth Street Cincinnati, Ohio 45202, <br><br> Plaintiff, <br><br> v. <br><br> **MELT SOLUTIONS, LLC** 201 E. Charles Street Marion, Indiana 46952, <br><br> Defendant. | Case No. |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Great American Insurance Company of New York ("Great American") through its undersigned attorneys, hereby brings its Complaint for Declaratory Judgment against Melt Solutions, LLC ("Melt Solutions") and in further support thereof, alleges as follows:

### NATURE OF THE CASE

1. This is a declaratory judgment action pursuant to 28 U.S.C. § 2201 for the purpose of determining an actionable and justiciable controversy between the parties, as hereinafter more fully appears. The controversy involves whether an appraisal award should be set aside as invalid and made without authority under the terms and conditions of the policy at issue and Indiana law. In addition, Great American seeks a declaration of this Court concerning coverage under a certain commercial property policy of insurance for alleged damage occurring on or about March 8, 2017, at the subject property.

1

## THE PARTIES

2.  Plaintiff Great American is a property casualty insurance company incorporated in the State of New York with its principal place of business located at 301 E. Fourth St., Cincinnati, Ohio 45202. Great American is a citizen of the States of New York and Ohio.

3.  Defendant Melt Solutions is a Texas corporation with its principal place of business at 140 Hwy 39 North, Normangee, Texas, 77871, making it a citizen of Texas, and is registered to do business in Indiana.

## JURISDICTION & VENUE

4.  This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.  Venue is proper in this District under 28 U.S.C. §§ 1391(b) because the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND FACTS

6.  Great American issued a Commercial Property Insurance Policy to Melt Solutions with policy number MAC 7482950 09 00, with effective dates from August 15, 2016 to August 15, 2017 (the "Policy"). In relevant part, the Policy provided certain coverage for loss to Covered Property as defined in the Policy. A true and correct copy of the Policy is attached to this Complaint as Exhibit A.

7.  The Policy insured the building located at 201 East Charles Street, Marion, Indiana 46952 (the "Property").

8. On or around March 10, 2017, Melt Solutions tendered a claim to Great American for alleged loss occurring during a wind storm on or around March 8, 2017.

9. Great American timely and properly acknowledged the claim and began investigation of the same. Early on, Great American identified various coverage issues, which directly impacted the scope of and the valuation of the covered loss.

10. Pursuant to the terms of the Policy, Great American paid $297,502.51 for the actual cash value of covered loss (less the Policy deductible) to Melt Solutions for covered damage to the Property.

11. Notwithstanding Great American's payments and continued efforts to work with Melt Solutions, Melt Solutions invoked the appraisal process.

12. In its April 27, 2018 response to Melt Solutions' Demand for Appraisal, Great American agreed to appraisal, but expressly reserved its rights for resolution of any and all coverage issues outside of the appraisal process. A true and correct copy of this letter is attached as Exhibit B.

13. Importantly, the Policy provides for the appraisal process as follows (see Exhibit A, Select Business Policy Conditions (SB 8601 (Ed. 02/15)), at page 3) (emphasis added):

> **B.** **Appraisal**
>
> If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of the court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense, or the amount of loss. If they fail to agree, they will submit their

>    differences to the umpire.  A decision agreed to by any two will be binding.  Each party will:
>
>    1.   pay its chosen appraiser; and
>
>    2.   bear the other expenses of the appraisal and umpire equally.
>
>    If there is an appraisal we will still retain our right to deny the claim.
>
>    **Neither the appraisers nor the umpire shall attempt to resolve any issue of insurance coverage, policy exclusions, compliance with the Policy terms and conditions, or any issues concerning the Limits of Insurance available under the Policy.**

14. Given the coverage issues, Great American specifically stated in its April 27, 2018 letter, "to comply with the provisions of the appraisal clause in the policy, any appraisal must be limited to a determination of the amount of loss or damage to the property.  However, where the areas of claimed damage involve disputed coverage issues, the appraisal of those damages by the appraisers and/or umpire would have to be valued separately, so that coverage issues are not co-mingled with the appropriate subject matter of the appraisal."

15. After sending this letter, Great American's selected appraiser began diligently working with Melt Solutions' selected appraiser to identify an impartial umpire to conduct the appraisal process.

16. Indeed, Great American's selected appraiser presented several names to Melt Solution as umpires each having experience in adjusting or appraising similar losses and able to provide references in support of his or her own work.

17. Melt Solutions' appraiser rejected each of these umpires and suggested only two umpires, with either no prior relevant experiences or unwilling to provide references in support of his or her own work. Ultimately, due to Melt Solutions' continued rejection of qualified umpires,

4

and after application to the LaGrange Superior Court, the court appointed former Judge Gene R. Duffin as the umpire for the appraisal process.

18. As the appraisal process unfolded, Great American was severely prejudiced by the conduct and actions of both Melt Solutions' appraiser as well as the umpire.

19. Despite the complexity of the claim, the umpire failed to visit the Property even once despite Great American's appraiser specifically making a request for a joint inspection of the property. Moreover, the umpire allowed Melt Solutions' public adjuster to attend the meeting between the appraisers and the umpire, thus allowing a party with a financial interest in the outcome of the claim--the public adjuster--to set forth arguments and attempt to influence the umpire and his decision.

20. Moreover, upon information and belief, the umpire held an *ex parte* meeting with Melt Solutions' appraiser and Melt Solutions' public adjuster. Great American's appraiser was not invited to this meeting.

21. On June 21, 2019, an appraisal award in the amount of $1,893,245.77, was signed and dated by both the umpire and Melt Solutions' appraiser. A true and accurate copy of that award is attached to this Complaint as Exhibit C.

22. The appraisal award entered simply adopted Melt Solutions' valuation despite the fact that there are several calculation errors in the packet submitted to the umpire by Melt Solutions.

23. In the umpire's initial email issuing the award, the umpire also explicitly determines coverage issues, in violation of the terms of the Policy.

24. With regard to covered losses, the Policy provides, in relevant part:

5

## BUILDING AND PERSONAL PROPERTY COVERAGE FORM
### (SB 86 02 (Ed. 02 15))

\*\*\*

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property shown in the Declarations caused by or resulting from any Covered Cause of Loss.

#### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this Section, **A.1.**, and limited in **A.2.**, **Property Not Covered**, if a Limit of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations

\* \* \*

25. The Policy further provides the following exclusions from coverage (see Exhibit A, SB 86 03 (Ed. 02/15) p. 6 of 25):

### C. Exclusions

2. We will not pay for loss or damage caused by or resulting from any of the following:

    d. (1) wear and tear . . .

## FIRST CAUSE OF ACTION
### (MOTION TO SET ASIDE APPRAISAL AWARD)

26. The foregoing paragraphs of this Complaint are incorporated in this Paragraph 26 as if specifically and fully set forth herein.

27. Under applicable law, this Court shall set aside an appraisal award based on evidence of fraud, collusion, misfeasance, mistake, bias, partiality, or similar circumstances which indicate a manifest injustice. Such a manifest injustice occurred in this matter for multiple reasons requiring that the appraisal award be set aside and declared invalid.

28. Accordingly, Great American moves this Court to set aside the appraisal award, and pursuant to 28 U.S.C. § 2201, declare the rights and duties of the parties with respect to the matters submitted to the appraisers and the umpire and the ensuing award.

## THE UMPIRE DID NOT HAVE AUTHORITY TO MAKE THE AWARD

29. An umpire's acts in excess of the authority conferred upon him by the appraisal agreement is not binding on the parties. Further, the umpire's power to act is conditioned upon disagreement between the appraisers. Additionally, appraisers have no power or authority to determine questions of causation, coverage, liability, or interpret provisions of the Policy. Appraisers have no power to determine the cause of the alleged damages. Their power is limited to determining the value of the property or the amount of the loss.

30. Here, the umpire clearly exceeded his authority by determining issues of coverage under the Policy. Indeed, in his June 18, 2019 email informing the appraisers of the award, the umpire stated that he "fully appreciate[s] [Great American appraiser's] arguments about preexisting damages to the roof" but came to the conclusion that "[i]t is impossible to determine exactly what was preexisting prior to the storm and what damage the storm caused . . . ." A true and accurate copy of this email communication is attached as Exhibit D.

31. In making such a statement, the umpire determined an issue of coverage—namely, whether preexisting damage or damage due to wear and tear is covered under the Policy.

7

32. Great American respectfully requests that the Court vacate the award and declare that the award was made without authority under the Policy or Indiana law.

## THE AWARD WAS NOT IN COMPLIANCE WITH THE REQUIREMENTS OF THE POLICY, AND THERE WAS MISFEASANCE BY THE UMPIRE AND MELT SOLUTIONS' APPRAISER

33. An award which is not made substantially in compliance with the requirements of the Policy cannot be sustained and must be set aside. The Policy sets requirements for the appointment of the umpire, the procedures to be followed, the prerequisites for reaching certain determinations, and also explicitly excludes issues of coverage from the umpire's jurisdiction.

34. Importantly, the appraisal provision also requires impartial appraisers who then communicate with the umpire.

35. Here, an entirely biased situation occurred. After failing to visit the Property even once, the umpire called a meeting with the appraisers. At this meeting, Melt Solutions' appraiser was accompanied by Melt Solutions' public adjuster who had a financial interest in the outcome of the claim because his compensation is based on a percentage of any claim payments or awards, and is therefore, unquestionably biased.

36. Indeed, notwithstanding Great American's requests that Melt Solutions' own appraiser confirm that he had no financial interest in the outcome, he refused to provide such confirmation or explain the basis of his compensation. Upon information and belief, because Melt Solutions' appraiser is also a public adjuster, he also had a financial interest in the outcome of the claim and therefore was also biased. In the event Melt Solutions' appraiser did maintain a financial interest in the outcome of this appraisal, he would be, as a matter of law and definition, disqualified and the award would be invalid.

37. Over the adamant objection of Great American's appraiser, the umpire allowed Melt Solutions' public adjuster to remain at the meeting and present damage information and advocate on behalf of Melt Solutions during the appraisal meeting. The umpire also consulted with Melt Solutions' public adjuster when finalizing his award.

38. In addition, upon information and belief, there was *ex parte* contact between the umpire and Melt Solutions' appraiser and public adjuster to which Great American's appraiser was not permitted to attend or participate. Furthermore, upon information and belief, the umpire received documents from Melt Solutions' appraiser that were not provided to Great American's appraiser.

39. In addition, upon information and belief, there was a meeting among the umpire, Melt Solutions' public adjuster and Melt Solutions' appraiser after both appraisers met with the umpire. All of these events indicate a lack of impartiality and demonstrate, at a minimum, impropriety and misfeasance that indicate a manifest injustice.

40. Great American respectfully requests that the Court vacate the award and declare that the award was invalid, without authority and not in compliance with the requirements of the Policy.

## THE AWARD WAS MADE AS THE RESULT OF A MISTAKE

41. Mistake in an appraisal has been defined as where the appraisers and umpire were laboring under a mistake of fact by which the appraisal award operates in a way they did not intend, such that the award does not speak to the intention of the appraisers and umpire, or where the error resulting in the award is so great as to be indicative of gross partiality, undue influence, or corruption.

42. Additionally, dishonesty and the resultant confusion are sufficient to support a finding of mistake.

43. Several mistakes were made here. First, the umpire included undamaged sections of the roof in the appraisal award. Melt Solutions' appraiser included approximately 317,000 square feet for the estimate it submitted. However, the total square footage of the roof appraised was 268,850. Accordingly, correcting this mistake would deduct $266,703.27 from the award.

44. Further, Melt Solutions' appraiser submitted a packet with errors in mathematical calculations. On Page 25 of the packet, the appraiser sets forth the total sum of the repair bid. In calculating this number, he added $399,272.00 instead of $39,272.00, which resulted in an award inflated by at least $360,000.00. The appraiser appointed by Great American provided a submission to the umpire that included Melt Solutions' own roofer's bid numbers that the umpire could have used to correct the mistake. Instead, the umpire ignored the submission provided by Great American's appraiser.

45. Upon information and belief, the umpire did not correct the calculation because he adopted Melt Solutions' appraisers' numbers without any review or analysis. The umpire's only role in an appraisal process is to resolve differences between appraisers which the appraisers, themselves, are unable to resolve. Clearly, in the present instance, this is not what occurred. Because of this, the appraisal award unquestionably contains an objective, indisputable and demonstrable mistakes and must be set aside.

46. Great American respectfully requests that the Court vacate the award and declare that the award was made as a result of mistake.

## THE UMPIRE WAS NOT COMPETENT

47. The Policy and law requires competency of the impartial third parties conducting the appraisal process. This appraisal process involved competing positions on highly technical roof repair and damage issues. Great American obtained building engineering and roof construction and repair reports and estimates that required an umpire to have extensive experience in roofing appraisals to evaluate.

48. The umpire, while an experienced mediator, was not qualified by training, experience, or education to inspect a building and determine whether a roof has been damaged by wind; to determine whether a roof can be repaired or must be replaced; or to determine the costs to repair or replace the roof of a commercial building.

49. Further, the umpire did not take the necessary steps to properly evaluate the Property. The umpire never visited the Property to conduct an inspection, and as of the date of the appraisal award, he had not viewed the Property in person

50. The failure to visit the property combined with the mistakes in the calculation of the award and handling of the appraisal process further demonstrate that the umpire was not competent.

51. Great American moves to vacate the appraisal award on the grounds that the umpire failed to meet the Policy's and law's requirement that he be a competent umpire.

## SECOND CAUSE OF ACTION
## (DECLARATORY JUDGMENT REGARDING COVERAGE)

52. The foregoing paragraphs of this Complaint are incorporated into this Paragraph 52 as if specifically and fully set forth herein.

11

53. Great American petitions this Court pursuant to 28 U.S.C. § 2201, to declare the rights and duties of the parties with respect to coverage under the Policy.

54. The insured must establish that claimed damage is due to a covered cause of loss to covered property during the policy period, and Melt Solutions has failed to carry its burden of proof as to a significant portion of the damage it claims.

55. Moreover, based upon Great American's investigation, a significant portion of the damage claimed to the roof is due to preexisting damage or wear and tear that is explicitly excluded under the Policy, and not to the March 8, 2017 wind event.

56. In addition, all applicable exclusions, deductibles, co-insurance penalties, and offsets for prior claim payments or other adjustments, offsets or reductions should be applied and enforced by the Court.

57. Accordingly, for those portions of the roof damaged as a result of wear and tear, and otherwise excluded or limited from coverage under the Policy, Great American owes no coverage.

58. As a result of the foregoing, Great American seeks a declaration that it is not obligated to pay Melt Solutions for the damage to the roof not covered by the Policy and/or which were caused by wear and tear or otherwise excluded or limited by the coverage of the Policy.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, Great American Insurance Company of New York, respectfully prays that the Court vacate the appraisal award and render the declarations requested herein and that the Court grant it any and all other relief to which Great American Insurance Company of New York may show itself to be justly entitled.

Dated this 19th day of July, 2019.

    Respectfully submitted,

*/s/ Krysta K. Gumbiner*
Krysta K. Gumbiner (IN No. 31989-45)
Dinsmore & Shohl LLP
227 W. Monroe St.
Chicago, IL 60606
Phone: (312) 775-1743
Fax: (312) 372-6085
***Attorney for Great American Insurance Company of New York***